132 P.3d 862

**Beverly HART, Plaintiff–Appellee,**

v.

**Anthony HART, Defendant–Appellant.**

**No. 26073.**

Intermediate Court of Appeals of Hawai'i.

March 3, 2006.

Richard Lee, Honolulu, and Paul D. Hicks, on the briefs, for Defendant–Appellant.

Thomas D. Collins, III, Honolulu, on the briefs, for Plaintiff–Appellee.

WATANABE, Acting C.J., LIM and NAKAMURA, JJ.

### Opinion of the Court by LIM, J.

Beverlee Hart (Beverlee or Plaintiff), a resident of Hawai'i with her minor son (Son), brought this action in the Family Court of the First Circuit (family court) against her ex-husband, Anthony Hart (Anthony or Mr. Hart or Defendant), a resident of Florida. She sought, by way of the Uniform Interstate Family Support Act (the UIFSA), Hawaii Revised Statutes (HRS) ch. 576B (Supp.2005), interstate enforcement and modification of the purported child support provisions of a New York divorce decree.

Anthony appeals the family court's September 22, 2003 judgment, which was based on the September 8, 2003 order that granted Beverlee's June 16, 2003 motion for post-decree relief. Anthony also appeals the March 7, 2003 order that granted Beverlee's January 3, 2003 motion for post-decree relief

and denied Anthony's February 5, 2003 motion to dismiss, along with two ancillary orders, the March 7, 2003 order for income withholding and the August 27, 2003 order awarding attorney's fees and costs.[1]

We vacate the foregoing judgment and orders because the family court lacked the personal jurisdiction over Anthony required to enter them.

### I. Background.

On June 16, 1989, Anthony and Beverlee made an "Investment Agreement" (the Agreement) in New York. Under the Agreement, Beverlee transferred her $10,000 portion of an investment account she held jointly with Anthony to Anthony, who agreed to hold and preserve the $10,000 plus interest in the account for the benefit of Son, and to render quarterly accountings to Beverlee. This was to be, hopefully, Son's college fund.

On November 7, 1990, the Supreme Court of the State of New York, Clinton County, entered a judgment granting Anthony a divorce from Beverlee. The judgment was predicated upon an October 4, 1990 decision *pendente lite*. The judgment awarded joint legal custody of Son to the parties and primary physical custody to Beverlee, subject to Anthony's liberal visitation rights. The judgment also ordered Anthony to pay $152 a week in child support via payroll deduction directly to Beverlee. The judgment did not incorporate nor even mention the Agreement. Following the divorce, both parties moved away from New York. Anthony took an overseas assignment with the United States Air Force, and eventually settled in Florida. Beverlee and Son moved to Hawai'i in September 1992.

On January 3, 2003, Beverlee registered the New York judgment and decision in the family court pursuant to the UIFSA. *See* HRS § 576B–602. In her registration, Beverlee alleged that "Plaintiff seeks modification and enforcement of provisions relating to child support and to the child's college tuition fund. This court has jurisdiction over the

---

present matter in that Plaintiff and the child resides [ (sic) ] on the Island of Oahu and the Defendant has transacted business herein."

The same day, Beverlee filed an appurtenant motion for post-decree relief. Beverlee attached to her motion not only the New York decision and judgment, but the Agreement as well. Beverlee requested that child support be "modified" so that it be paid through the State Child Support Enforcement Agency, rather than through voluntary allotment. For further "modification," Beverlee asked for an accounting of Son's interest in the investment account, alleging that Anthony had not provided one. Finally, Beverlee prayed that Son's money be transferred to a trust account, with both parents' signatures required for withdrawal.

On January 21, 2003, a contract process server served Anthony with Beverlee's registration and motion, at the main gate of Elgin Air Force Base in Florida. On February 5, 2003, Anthony, appearing specially as he did throughout the proceedings below, filed a motion to dismiss the case because the family court lacked personal jurisdiction over him. Anthony stated, and Beverlee has not disputed, that

> Mr. Hart is not now nor has he ever been a resident of the State of Hawaii. Neither does Mr. Hart own any real or personal property located within the State of Hawaii, nor does he engage in any commercial activity in this State. He was present in this State more than fifteen years ago, when he had a less than twenty-four hour stopover at that certain United States military reservation known as the Hickam Air Force Base, while in transit from the South Pacific to the continental United States.

At the March 7, 2003 hearing on Anthony's motion to dismiss, the family court apparently decided that, because Anthony had been adequately served by consent, he had thereby consented to jurisdiction. The family court then afforded Anthony an opportunity to appear by telephone to hear and be heard on Beverlee's motion for post-decree relief, but Anthony's attorney declined, reiterating that the family court lacked jurisdiction. The family court then defaulted Anthony.

In its March 7, 2003 order granting Beverlee's motion for post-decree relief and denying Anthony's motion to dismiss, the family court held:

> 1. The court finds Defendant does not dispute adequacy of service, consents thereto and court therefore has jurisdiction.

> 2. Defendant is defaulted based upon failure to appear and/or failure to participate in telephone conference.

It is from this ruling that the judgment and other orders appealed from flowed.

## II. Discussion.

■ It is a bedrock precept of jurisprudence that before a court of this State may affect the rights or interests of any person, it must have *in personam* jurisdiction over that person:

> The Due Process Clause of the Fourteenth Amendment operates as a limitation on the jurisdiction of state courts to enter judgments affecting rights or interests of nonresident defendants. *See Shaffer v. Heitner*, 433 U.S. 186, 198–200, 97 S.Ct. 2569, 2577, 53 L.Ed.2d 683 (1977). It has long been the rule that a valid judgment imposing a personal obligation or duty in favor of the plaintiff may be entered only by a court having jurisdiction over the person of the defendant. *Pennoyer v. Neff*, 95 U.S. 714, 732–733, 24 L.Ed. 565, 572 (1878); *International Shoe Co. v. Washington*, 326 U.S.[310,] 316, 66 S.Ct.[154,] 158[90 L.Ed. 95 (1945)]. The existence of personal jurisdiction, in turn, depends upon the presence of reasonable notice to the defendant that an action has been brought. *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 313–314, 70 S.Ct. 652, 656–657, 94 L.Ed. 865 (1950), and a sufficient connection between the defendant and the forum State to make it fair to require defense of the action in the forum. *Milliken v. Meyer*, 311 U.S. 457, 463–464, 61 S.Ct. 339, 342–343, 85 L.Ed. 278 (1940).

*Kulko v. Superior Court of California*, 436 U.S. 84, 91, 98 S.Ct. 1690, 56 L.Ed.2d 132

(1978). *See also In re Doe,* 83 Hawai'i 367, 373–74, 926 P.2d 1290, 1296–97 (1996).

The UIFSA cannot ignore this constitutional command—nor does it, for the UIFSA recognizes this fundamental principle of federalism and fairness. Its provisions for long-arm jurisdiction make that clear:

## ARTICLE 2. JURISDICTION

## PART I. EXTENDED PERSONAL JURISDICTION

[§ 576B–201] **Bases for jurisdiction over nonresident.** In a proceeding to establish, enforce, or modify a support order or to determine parentage, a tribunal of this State may exercise personal jurisdiction over a nonresident individual or the individual's guardian or conservator if:

(1) The individual is personally served with summons or notice within this State;

(2) The individual submits to the jurisdiction of this State by consent, by entering a general appearance, or by filing a responsive document having the effect of waiving any contest to personal jurisdiction;

(3) The individual resided with the child in this State;

(4) The individual resided in this State and provided prenatal expenses or support for the child;

(5) The child resides in this State as a result of the acts or directives of the individual;

(6) The individual engaged in sexual intercourse in this State and the child may have been conceived by that act of intercourse;

(7) The individual asserted parentage in the office of health status monitoring maintained in this State by the department of health; or

(8) There is any other basis consistent with the constitutions of this State and the United States for the exercise of personal jurisdiction.

Thus, the UIFSA affords two general avenues of relief for its petitioners:

An individual petitioner or a support enforcement agency may commence a proceeding authorized under this chapter by filing a petition in an initiating tribunal for forwarding to a responding tribunal or by filing a petition or a comparable pleading directly in a tribunal of another state which has or can obtain personal jurisdiction over the respondent.

HRS § 576B–301(c).

 Beverlee chose neither path, opting instead to have Anthony haled from Florida into family court here. Beverlee chose wrong, and the family court was wrong to accommodate her. *Doe,* 83 Hawai'i at 373, 926 P.2d at 1296 ("personal jurisdiction is a question of law reviewable *de novo* when the underlying facts are undisputed" (citation and internal quotation marks omitted)).

It is well settled that

the constitutional standard for determining whether the State may enter a binding judgment against appellant here is that set forth in this Court's opinion in *International Shoe Co. v. Washington, supra:* that a defendant "have certain minimum contacts with [the forum State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " 326 U.S., at 316, 66 S.Ct., at 158, quoting *Milliken v. Meyer, supra,* 311 U.S., at 463, 61 S.Ct., at 342. While the interests of the forum State and of the plaintiff in proceeding with the cause in the plaintiff's forum of choice are, of course, to be considered, *see McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957), an essential criterion in all cases is whether the "quality and nature" of the defendant's activity is such that it is "reasonable" and "fair" to require him to conduct his defense in that State. *International Shoe Co. v. Washington, supra,* 326 U.S., at 316–317, 319, 66 S.Ct., at 158, 159. *Accord, Shaffer v. Heitner, supra,* 433 U.S., at 207–212, 97 S.Ct., at 2581–2584; *Perkins v. Benguet Mining Co.,* 342 U.S. 437, 445, 72 S.Ct. 413, 418, 96 L.Ed. 485 (1952).

Like any standard that requires a determination of "reasonableness," the "mini-

mum contacts" test of *International Shoe* is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite "affiliating circumstances" are present. *Hanson v. Denckla,* 357 U.S. 235, 246, 78 S.Ct. 1228, 1235, 2 L.Ed.2d 1283 (1958). We recognize that this determination is one in which few answers will be written "in black and white. The greys are dominant and even among them the shades are innumerable." *Estin v. Estin,* 334 U.S. 541, 545, 68 S.Ct. 1213, 1216, 92 L.Ed. 1561 (1948).

*Kulko,* 436 U.S. at 92, 98 S.Ct. 1690 (brackets in the original).

 Hawai'i has adopted the federal formulation, *see Doe,* 83 Hawai'i at 373–74, 926 P.2d at 1296–97, and our supreme court has further gleaned two general types of personal jurisdiction:

A person may be subject to personal jurisdiction in either of two ways. First, general jurisdiction exists where a defendant has continuous and systematic contacts with the forum; the exercise of jurisdiction in such a case does not offend traditional notions of fair play and substantial justice. *See, e.g., Core–Vent Corp. v. Nobel Industries AB,* 11 F.3d 1482, 1485 (9th Cir.1993)....

If a defendant's contacts with the forum are not continuous and systematic, the forum may exercise only specific jurisdiction, and due process requires application of the following three-part test:

(1) The nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Reebok Int'l Ltd. v. McLaughlin,* 49 F.3d 1387, 1391 (9th Cir.), *cert. denied,* 516 U.S. 908, 116 S.Ct. 276, 133 L.Ed.2d 197 (1995); *Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201, 206 (1st Cir.1994)....

*Doe,* 83 Hawai'i at 374, 926 P.2d at 1297.

Viewed through the prism of our guiding precedents, the family court had neither general nor specific personal jurisdiction over Anthony. That much is clear from mere invidious comparison.

When the *Kulko* Court held that California lacked personal jurisdiction over the father to adjudicate the mother's action for full custody and increased child support, the following was the case:

Appellant Ezra Kulko married appellee Sharon Kulko Horn in 1959, during appellant's three-day stopover in California en route from a military base in Texas to a tour of duty in Korea. At the time of this marriage, both parties were domiciled in and residents of New York State. Immediately following the marriage, Sharon Kulko returned to New York, as did appellant after his tour of duty. Their first child, Darwin, was born to the Kulkos in New York in 1961, and a year later their second child, Ilsa, was born, also in New York. The Kulkos and their two children resided together as a family in New York City continuously until March 1972, when the Kulkos separated.

Following the separation, Sharon Kulko moved to San Francisco, Cal. A written separation agreement was drawn up in New York; in September 1972, Sharon Kulko flew to New York City in order to sign this agreement. The agreement provided, *inter alia,* that the children would remain with their father during the school year but would spend their Christmas, Easter, and summer vacations with their mother. While Sharon Kulko waived any claim for her own support or maintenance, Ezra Kulko agreed to pay his wife $3,000 per year in child support for the periods when the children were in her care, custody, and control. Immediately after execution of the separation agreement, Sharon Kulko flew to Haiti and procured a divorce there; the divorce decree incorporated the terms of the agreement. She then re-

turned to California, where she remarried and took the name Horn.

The children resided with appellant during the school year and with their mother on vacations, as provided by the separation agreement, until December 1973. At this time, just before Ilsa was to leave New York to spend Christmas vacation with her mother, she told her father that she wanted to remain in California after her vacation. Appellant bought his daughter a one-way plane ticket, and Ilsa left, taking her clothing with her. Ilsa then commenced living in California with her mother during the school year and spending vacations with her father. In January 1976, appellant's other child, Darwin, called his mother from New York and advised her that he wanted to live with her in California. Unbeknownst to appellant, appellee Horn sent a plane ticket to her son, which he used to fly to California where he took up residence with his mother and sister.

*Kulko,* 436 U.S. at 86–88, 98 S.Ct. 1690 (footnote omitted).

When the *Doe* court held that the family court lacked personal jurisdiction over the mother in an action to terminate her parental rights, the following circumstances obtained:

> This complex and unique case has been in our court system for over eight years, since March 14, 1988, when [the State Department of Human Services (DHS) ] filed its initial CPA petition asking the family court to determine Doe's best interests. The child of a Filipina mother and an American father (Father), Doe was born in

Australia on August 6, 1987. When Doe was two to three months old, he arrived in Hawaiʻi with Father, who was seeking reinstatement of his erroneously suspended Veterans Administration (VA) benefits. Mother returned home to the Philippines. Mother says that she reluctantly agreed to let Father take Doe because their Australian tourist visas were expiring, and because the couple mistakenly thought that Doe would need a visa to accompany her to the Philippines.

> Father has a mental disability in partial remission and a history of abusing children (although not with Doe). Upon his arrival in Hawaiʻi, Father asked the Philippine Consulate to care for Doe. The Consulate referred him to DHS. Because he did not have adequate resources to care for Doe, Father consented to the child's placement in a DHS Emergency Shelter Home in December 1987.[2]

*Doe,* 83 Hawaiʻi at 369, 926 P.2d at 1292 (original footnote omitted).

### III. Conclusion.

We hold, again, that the family court lacked personal jurisdiction over Anthony. We therefore vacate the judgment and orders appealed from and remand for proceedings consistent with this opinion.

---

**2.** Although Mother regularly corresponded with the court and with social workers during the pendency of the case and had appointed counsel, she did not come to Hawaiʻi until late in the case and personally participated only in the permanency trial. *In re Doe,* 83 Hawaiʻi 367, 369–71, 926 P.2d 1290, 1292–94 (1996).