**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000696
30-JUN-2021
09:52 AM
Dkt. 92 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---

MJ, Plaintiff-Appellee,
v.
CR, Defendant-Appellant
and
CHILD SUPPORT ENFORCEMENT AGENCY,
STATE OF HAWAIʻI, Defendant.

NO. CAAP-17-0000696

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-P NO. 16-1-6470)

June 30, 2021

GINOZA, CHIEF JUDGE, LEONARD AND HIRAOKA, JJ.

OPINION OF THE COURT BY GINOZA, CHIEF JUDGE

Defendant-Appellant CR (**Father**) appeals from (1) the "Order" (**Temporary Order**), filed on January 26, 2017, in favor of Plaintiff-Appellee MJ (**Mother**); and (2) the "Decision and Order" (**Decision**) filed September 1, 2017, by the Family Court of the First Circuit (**Family Court**).[1]

---

[1] The Honorable R. Mark Browning entered the Temporary Order. The Honorable Catherine H. Remigio presided over the trial held on June 14, 2017, and entered the Decision.

On appeal, Father contends the Family Court erred in its Temporary Order and its Decision because: (1) it lacked subject matter jurisdiction with respect to the "Petition for Paternity" (**Petition**) filed by Mother in this matter;[2] and (2) it lacked personal jurisdiction over Father for purposes of determining parentage or ordering child support and monetary obligations with respect to Father and Mother's minor child (**Child**).  Father asserts the Family Court violated his rights to due process by not allowing him to argue the issue of personal jurisdiction at trial.  Father also challenges many of the Family Court's conclusions of law (**COLs**) and findings of fact (**FOFs**).[3]

We conclude the Family Court had jurisdiction to decide custody in this case, but lacked personal jurisdiction over Father to decide Father's paternity and Father's obligations for child support and other monetary expenses related to Child.  Therefore, we affirm in part and vacate in part the Temporary Order and Decision entered by the Family Court.

## I.  Background

Mother and Father met in Texas in September 2014 and began dating.  At the time, Mother was obtaining a divorce from her then-husband, HF (**HF**).[4]  Mother became pregnant in January 2016.  In April 2016, Mother moved into Father's home with her two minor children from her marriage with HF.  After an argument, Mother and Father separated approximately June 2, 2016, when Father told Mother she needed to leave his residence.  Mother moved out of Father's home.

On June 27, 2016, Mother visited her parents in Mililani, Hawaiʻi, and asked if she could move in with them.

---

[2]  In the Petition, Mother sought, *inter alia*, to establish that Father was Child's natural father, sole legal and physical custody of Child, and to have Father pay child support and other expenses related to Child.

[3]  Specifically, Father challenges COLs 2, 4-13 entered by Judge Browning, as well as FOFs 8, 10-16, 18-21, 23-26, 28, 31, 34, 37, 42, 45, 74-90, and COLs 1, 7, 11, 12, 15, 16, 18, 19-27 entered by Judge Remigio.  Father does not address each challenged COL and FOF distinctly, but as part of his broader arguments that the Family Court lacked jurisdiction in this case.

[4]  HF was named as a party below, but is not a party to this appeal.

Sometime in or around July 2016, Mother left Texas and began living in Hawaiʻi with her parents. After Mother moved to Hawaiʻi, she traveled between Texas and Hawaiʻi for various reasons, including court hearings and visitation with the children she had with HF.

Child was born in Honolulu in October 2016. In September 2016, Father filed a paternity action in Texas. Pursuant to an order in that Texas case, Father submitted to a paternity test in November 2016,[5] which confirmed his biological paternity of Child.

On November 15, 2016, Mother filed the Petition initiating this action in Hawaiʻi and seeking to establish Father's paternity of Child, sole custody of Child, child support, and other payments from Father under Hawaii Revised Statutes (**HRS**) Chapters 346, 571, 576D, and 584. Father was personally served with the Petition at his place of employment in Texas.

On January 23, 2017, Father filed his "Special Appearance and Answer to Petition for Paternity" (**Answer to the Petition**) and argued, *inter alia*, that the Petition should be dismissed because the Family Court lacked both personal and subject matter jurisdiction. Father declared that he had only been in Hawaiʻi once, on vacation as a teenager, had never lived in the state, did not own property in Hawaiʻi, and did not conduct any business in Hawaiʻi. He also challenged Mother's residency, arguing that she was a resident of Texas, and asserted that Child was conceived in Texas.

**A.   Pre-Trial Hearing in Hawaiʻi**

At the hearing for temporary custody on January 26, 2017, Mother's attorney made an offer of proof that: Mother resided in Hawaiʻi since June 27, 2016; she initially lived in Mililani with her father, stepmother, brother, and grandmother

_____

[5] The Family Court's findings incorrectly list several events as taking place in 2017 instead of 2016, including the date of the paternity test as November 2017, which the parties concede are typographical errors.

3

before renting her own apartment on December 12, 2016; Mother was going through a divorce in Texas and had traveled to Texas since moving to Hawaiʻi; Mother went back to Texas for a week, because the Texas court ordered Mother to appear personally for Father's paternity petition.

Father's attorney asked Mother whether her Texas attorney filed papers that listed her address as being in Texas. Mother's attorney objected and the Family Court stopped the questioning, stating:

> Look, I've taken everything into consideration. The Court in Hawaii has jurisdiction, all right? And I had a conversation with the judge in Texas, discussed this matter, and decided based upon our conversation that if the facts that had initially been proceeded [sic] were testified to, that Texas would agree, and it did, to Hawaii taking jurisdiction.

Father's counsel asked that the Family Court state the basis for personal jurisdiction over Father for the record. The court replied:

> THE COURT: The only personal jurisdiction issue, you can call it what you may, it -- it has to do with the issues related to whether or not he wants his rights with respect to visitation. If he wants to contest any of that, then he'll have to submit to this court's personal jurisdiction. If he doesn't, that's up to him, but we still have subject matter jurisdiction over the issue of custody and over the child, so –
>
> [Father's counsel]: All right. If the Court wants --
>
> THE COURT: -- it's his call.
>
> [Father's counsel]: So if the Court wants to hold my client responsible for paying child support --
>
> THE COURT: Since the baby --
>
> [Father's counsel]: -- it would --
>
> THE COURT: -- lives here, yes --
>
> [Father's counsel]: Would it not --
>
> THE COURT: -- I can issue those orders.
>
> [Father's counsel]: It would not need personal jurisdiction over the -- over the person who's supposed to pay?
>
> THE COURT: As I said, with respect to all issues related to this child and the responsibilities associated with this child's care under all the various different laws that exist, both state and federal, this court has jurisdiction to make whatever orders are necessary.
>
> As you know, we operate a calendar every Friday that has to do with child support orders that are issued by states outside other than Hawaii, where, say, California or Texas are asking that we enforce their orders that are issued with respect to parents who may be residing here now. We do that routinely. So, yes, the

answer is we can issue those orders, and I will.
[Father's counsel]: All right.  Thank you, Your Honor.
THE COURT: And Texas will abide by those orders.

The Temporary Order entered on January 26, 2017, states that "Hawaii has jurisdiction in this case because Hawaii is [C]hild's home state and may enter temporary orders and adjudicate the issues in this matter including child custody, visitation, child support and related matters."  The Temporary Order then granted Mother temporary sole legal and physical custody of Child, and ordered Father to pay temporary child support of $1,455 per month including past due child support for half of November 2016 as well as December 2016 and January 2017 totaling $3,637.50.

**B.   Trial**

Father again raised the issue of personal jurisdiction in his trial memo.  Trial was held June 14, 2017, at which Mother and Father testified.[6]  A certified public accountant also testified regarding Father's income as the president and an owner of a family-owned chain of convenience stores in Texas.

On September 1, 2017, the Family Court entered its Decision, finding that Child's natural parents are Mother and Father.  The court noted the Temporary Order had held that the court had jurisdiction "over Father and the subject matter sufficient to enter orders pertaining to custody, paternity, child support and any other orders in support of those orders."

In the Decision, the Family Court further determined that the parties shall share legal custody and that when the parties live within 150 miles of each other, they shall share physical custody; if the parties live more than 150 miles apart, the Family Court determined it was in Child's best interest that Mother have primary physical custody, subject to visitation by Father.  The Family Court awarded monthly child support of $2,784 to Mother, based on Father's gross monthly income of $45,416 and Mother's monthly income, comprised of alimony and imputed income,

---

[6]  The Decision mistakenly states the trial date was June 17, 2017.

5

of $2,643. The Decision also addressed other expenses related to, *inter alia*, insurance and educational expenses, and Father was ordered to reimburse Mother a portion of birth expenses and other reasonable child-related expenses incurred by Mother.

## II.  Standards of Review

### A.  Jurisdiction

"The jurisdiction of the family court is reviewed *de novo* under the right/wrong standard." Hsieh v. Sun, 137 Hawaiʻi 90, 98, 365 P.3d 1019, 1027 (App. 2016) (citing Puckett v. Puckett, 94 Hawaiʻi 471, 477, 16 P.3d 876, 882 (App. 2000)).

### B.  Findings of Fact and Conclusions of Law

> A family court's findings of fact are reviewed on appeal under the "clearly erroneous" standard. A finding of fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made. "Substantial evidence" is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.
> The family court's conclusions of law are reviewed on appeal de novo, under the right/wrong standard. Conclusions of law are not binding upon an appellate court and are freely reviewable for their correctness.

DL v. CL, 146 Hawaiʻi 328, 336, 463 P.3d 985, 993 (2020) (citations, brackets, and internal quotation marks omitted).

## III.  Discussion

### A.  The Family Court Had Subject Matter Jurisdiction Under HRS § 583A-201 to Make an Initial Child Custody Determination

Father challenges the Temporary Order issued on January 26, 2017, asserting the Family Court "lacked subject matter jurisdiction over this [Petition] because the court did not find, and the facts did not support, that Mother and Child lived continuously in Honolulu between Child's birth and the filing of Mother's [Petition]."[7] With regard to the Decision issued on September 1, 2017, Father asserts the Family Court "lacked subject matter jurisdiction" over the Petition because the order

---

[7] Father does not challenge the family court's *personal jurisdiction* over him related to the initial child custody determination.

regarding jurisdiction did not contain the requisite findings for subject matter jurisdiction.

We first address the Family Court's subject matter jurisdiction relating to custody. The Uniform Child Custody Jurisdiction Enforcement Act (**UCCJEA**) "governs jurisdictional issues that arise in interstate child custody proceedings and is codified in Hawaiʻi in HRS chapter 583A." See NB v. GA, 133 Hawaiʻi 436, 440, 329 P.3d 341, 345 (App. 2014). In this regard, HRS § 583A-201 (2006) provides the Family Court has jurisdiction to determine a child's initial custody, as specified therein, stating:

> **Initial child-custody jurisdiction.** (a) Except as otherwise provided in section 583A-204, a court of this State has jurisdiction to make an initial child-custody determination only if:
> (1)   This State is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this State but a parent or person acting as a parent continues to live in this State;
> (2)   A court of another state does not have jurisdiction under paragraph (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this State is the more appropriate forum under section 583A-207 or 583A-208, and:
> (A)   The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this State other than mere physical presence; and
> (B)   Substantial evidence is available in this State concerning the child's care, protection, training, and personal relationships;
> (3)   All courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this State is the more appropriate forum to determine the custody of the child under section 583A-207 or 583A-208; or
> (4)   No court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2), or (3).
> (b)   Subsection (a) shall be the exclusive jurisdictional basis for making a child-custody determination by a court of this State.
> (c)   Physical presence of, or personal jurisdiction over, a party or a child shall not be necessary or sufficient to make a child-custody determination.

HRS § 583A-201.  The UCCJEA defines "home state" as:

> the state in which a child lived with a parent or a person acting as a parent for a period of at least six consecutive months immediately before the commencement of a child-custody proceeding.  In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned.  A period of temporary absence of any of the mentioned persons is part of the period.

HRS § 583A-102 (2006) (emphasis added).

On March 14, 2018, the Family Court entered its FOFs and COLs related to the January 26, 2017 temporary custody hearing.  Citing relevant provisions of the UCCJEA, the Family Court concluded:

> 1. When the Petition was filed, Mother lived in Mililani[,] Hawaii, and Hawaii was also [Child's] residence since her birth.
>
> 2. The State of Hawaiʻi has jurisdiction to determine child custody and related orders for the support of the child in this case pursuant to the [UCCJEA] - [HRS] § 583A.
>
> . . . .
>
> 5. Hawaii has jurisdiction in this case because Hawaii is the subject child's home state and may enter temporary orders and adjudicate the issues in this matter including child custody, visitation, child support and related matters.
>
> 6. After speaking with a Texas judge familiar with this case; both the Texas Judge and Judge Browning are in agreement that under the facts of this case, Hawaii has jurisdiction over this matter.

(emphases added).

The Family Court found, and Father does not contest on appeal, that Hawaiʻi was Child's residence since her birth.  Father also fails to cite to any authority in support of his contention that Mother's trips to Texas were not "temporary absences" under HRS § 583A-201(a)(1).  Instead, Father asserts that the Family Court erred in asserting subject matter jurisdiction because the Court made no specific finding that Mother and Child's visits to Texas were "temporary absences" for purposes of determining Child's home state.  However, even without findings of all the facts upon which jurisdiction rests, "the record enables us to confirm the factual foundation for acceptance of jurisdiction by the family court."  Griffith v. Griffith, 60 Haw. 567, 571, 592 P.2d 826, 829-30 (1979).

The record shows that between June 27, 2016 and January 26, 2017, Mother traveled to Texas on multiple occasions, where she was going through a divorce and where her other children still live.  On one of those occasions, she was in Texas for approximately a week because a Texas court ordered her to appear for a paternity suit brought by Father.  After Child's birth, Mother took Child with her on the trips to and from Texas because Child was still breastfeeding.  Furthermore, Mother testified during cross-examination that she started moving her bank accounts and transferring her medical bills to Hawaiʻi beginning July 1, 2016, and that Mother told the Texas court she had been a resident of Hawaiʻi since July.

Mother's testimony is sufficient evidence to show that Mother and Child's trips were temporary absences.  "[T]he testimony of a single witness, if found by the trier of fact to have been credible, will suffice."  In re Doe, 95 Hawaiʻi 183, 196, 20 P.3d 616, 629 (2001).  The finding that Hawaiʻi was Child's "home state" was not clearly erroneous because Child was born in Hawaiʻi, had lived in Hawaiʻi since birth, and the record indicates Child was only temporarily absent from the state.

Thus, pursuant to HRS § 583A-201, the Family Court had jurisdiction to enter the child custody orders in this case.

**B.   The Family Court Did Not Have Personal Jurisdiction Over Father Under HRS § 576B-201**

Father asserts that the Family Court lacked personal jurisdiction over him to determine parentage or to order him to pay child support and monetary obligations.  In this regard, we agree with Father.

**1.   The basis for jurisdiction to decide paternity and child support issues differs from the initial custody determination**

Under the UCCJEA, a "[c]hild-custody determination," by definition, "does not include an order relating to child support or other monetary obligation of an individual."  See HRS § 583A-102 (2006).  Instead, the Uniform Interstate Family Support Act (**UIFSA**) governs jurisdictional issues related to

paternity or child support issues in interstate cases. See HRS Chapter 576B; HRS § 576B-201 (Supp. 2015). The Official Comment of the National Conference of Commissioners on Uniform State Laws for the UIFSA also acknowledges this bifurcated jurisdiction and notes that "a tribunal may have jurisdiction to establish a child-support order based on personal jurisdiction over the obligor under Section 201, but lack jurisdiction over child custody, which is a matter of status adjudication usually based on the home state of the child." See UIFSA § 201 cmt. (Unif. Law Comm'n 2008).

Personal jurisdiction is required before the Family Court can enter child support orders. See Hart v. Hart, 110 Hawaiʻi 294, 296, 132 P.3d 862, 864 (App. 2006). Therefore, although the Family Court could exercise jurisdiction over the parties relating to the initial custody determination, that jurisdiction did not automatically entail personal jurisdiction over Father with respect to the issues of paternity and child support.

2. **Personal jurisdiction over Father for purposes of paternity and child support under the UIFSA**

The UIFSA sets forth statutory authority for a tribunal in Hawaiʻi to have personal jurisdiction over a nonresident individual, for purposes of child support and paternity issues, as follows:

> **§ 576B-201**. **Bases for jurisdiction over nonresident**.
> (a) In a proceeding to establish or enforce a support order or to determine parentage of a child, a tribunal of this State may exercise personal jurisdiction over a nonresident individual or the individual's guardian or conservator if:
>     (1)  The individual is personally served with summons or notice within this State;
>     (2)  The individual submits to the jurisdiction of this State by consent in a record, by entering a general appearance, or by filing a responsive document having the effect of waiving any contest to personal jurisdiction;
>     (3)  The individual resided with the child in this State;
>     (4)  The individual resided in this State and provided prenatal expenses or support for the child;
>     (5)  The child resides in this State as a result of the acts or directives of the individual;
>     (6)  The individual engaged in sexual intercourse in this State and the child may have been conceived

by that act of intercourse;
(7) The individual asserted parentage of the child in the office of health status monitoring maintained in this State by the department of health; or
(8) There is any other basis consistent with the constitutions of this State and the United States for the exercise of personal jurisdiction.
(b) The bases of personal jurisdiction set forth in subsection (a) or in any other law of this State may not be used to acquire personal jurisdiction for a tribunal of this State to modify a child support order of another state unless the requirements of section 576B-611 are met, or in the case of a foreign support order, unless the requirements of section 576B-615 are met.

HRS § 576B-201 (Supp. 2015).

On March 14, 2018, the Family Court entered Findings of Fact and Conclusions of Law (**Findings and Conclusions**)[8] related to the trial, citing portions of the UIFSA long-arm statute for personal jurisdiction over Father as follows:

9. HRS §§ 576B-201, et seq., the [UIFSA] codified, states the requirements for the State of Hawaiʻi to assert jurisdiction over a nonresident individual for actions to establish, enforce, or modify a child support order.

10. HRS § 576B-201(a)(5) [sic] states the circumstances under which a tribunal of this State may exercise personal jurisdiction over a nonresident individual or the individual's guardian or conservator in a proceeding to establish or enforce a support order or to determine parentage of a child, including, but not limited to:

(2) The individual submits to the jurisdiction of this State by consent, by entering a general appearance, or by filing a responsive document having the effect of waiving any contest to personal jurisdiction;
. . .
(5) The child resides in this State as a result of the acts or directives of the individual;
. . .
(8) There is any other basis consistent with the constitutions of this State and the United States for the exercise of personal jurisdiction."

(ellipses in original).

---

[8] In addressing the Family Court's jurisdiction, the Findings and Conclusions refer in part to the ruling in the Temporary Order that the Family Court had jurisdiction to address, *inter alia*, custody and child support. However, neither the Temporary Order nor the Findings and Conclusions make findings supporting the ruling as to jurisdiction in the Temporary Order, other than that Hawaiʻi is Child's home state. At trial, the Family Court relied on the Temporary Order's determination as to personal jurisdiction and did not make an independent assessment of jurisdiction.

Family Court then concluded that,

11. Mother's decision to move to Hawaii to live with her parents occurred as a result of Defendant/Father's refusal to provide living assistance for Mother in a meaningful and sustained manner prior to [Child]'s birth. Aside from Defendant/Father, Mother had no other means to maintain a Texas residence, or family to live with in Texas, pending [Child]'s birth.

12. Defendant/Father's belief that Mother should not have moved to Hawaii flies in the face of the economic realities of Mother's living situation - particularly when she repeatedly requested his assistance and informed him that his failure to respond led her to make other living arrangements.

Thus, the Family Court found Father's failure to provide financial support for Mother, when she had repeatedly requested his assistance and informed him that his failure to respond led her to make other living arrangements, to be an "act or directive" that caused Child to reside in Hawaiʻi, and thus was sufficient to subject Father to personal jurisdiction under HRS § 576B-201(a)(5).[9]

The Hawaiʻi Supreme Court has stated that, "[p]ersonal jurisdiction exists when (1) the defendant's activity falls under the State's long-arm statute, and (2) the application of the statute complies with constitutional due process." Norris v. Six Flags Theme Parks, Inc., 102 Hawaiʻi 203, 207, 74 P.3d 26, 30 (2003) (citation omitted).

The Uniform Law Comment addressing the long-arm provisions for the UIFSA states that, "[t]he intent is to ensure that every enacting state has a long-arm statute that is as broad

_____

[9] The cases relied upon by Mother interpreting provisions equivalent to subsection (5), by courts in other jurisdictions, involve allegations that the nonresident parent abused or harassed the resident parent and/or abused the children. See In re the Marriage of Malwitz, 99 P.3d 56, 61 (Colo. 2004); Sneed v. Sneed, 842 N.E.2d 1095, 1099-1100 (Ohio Ct. App. 2005); Franklin v. Commonwealth, Dept. of Soc. Services, Div. of Child Support Enf't ex rel. Franklin, 497 S.E.2d 881, 885-86 (Va. Ct. App. 1998). Accordingly, in these cases the fleeing parent left the marital home and the nonresident spouse had a duty to support the children for whom the court ordered support.

In this case, the Family Court did not find abuse, but rather that Mother "felt physically threatened" by Father when she left the home in Texas. Additionally, when Mother moved to Hawaiʻi, Mother was still legally married to HF, with whom she shared two minor children who resided in Texas. The cases cited by Mother are not dispositive or persuasive in our analysis of personal jurisdiction over Father.

as constitutionally permitted." UIFSA § 201 cmt. (Unif. Law Comm'n 2008). The Uniform Law Comment also notes that with regard to subsections (3) through (6), these sections:

> identify specific fact situations justifying the assertion of long-arm jurisdiction over a nonresident. Each provides an appropriate affiliating nexus for such an assertion, when judged on a case-by-case basis with an eye on procedural and substantive due process. Further, each subsection does contain a possibility that an overly literal construction of the terms of the statute will overreach due process.

Id. (emphasis added).

"A court's power to exercise jurisdiction over non-residents is limited by the operation of the fourteenth amendment's due process clause." In Interest of Doe, 83 Hawaiʻi 367, 373, 926 P.2d 1290, 1296 (1996).

> Due process requires that a nonresident defendant have sufficient "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (citation omitted). "'[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)). The determining inquiry is whether "'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" Id. at 474, 105 S.Ct. at 2183 (quoting World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)). There is no "talismanic jurisdictional formula" and the court weighs each case on its facts. Id. at 485–86, 105 S.Ct. at 2189 (citation omitted).

Id. (quoting Shaw v. North Am. Title Co., 76 Hawaiʻi 323, 329-30, 876 P.2d 1291, 1297-98 (1994).[10]

### a.    General and specific jurisdiction

An individual is subject to personal jurisdiction in either of two ways, general jurisdiction or specific

---

[10]  Mother urges this court to ignore International Shoe and its progeny because the jurisdictional issues in those cases arose in commercial transactions and should not be applied to a deeply personal family matter such as a parent-child relationship. However, Mother fails to mention or distinguish Kulko v. Super. Ct. of California In & For City & Cty. of San Francisco, 436 U.S. 84 (1978), a Supreme Court case which applies International Shoe and its progeny to jurisdictional issues arising out of a family matter involving child custody and support.

jurisdiction. 83 Hawaiʻi at 374, 926 P.2d at 1297. "First, general jurisdiction exists where a defendant has continuous and systematic contacts with the forum; the exercise of jurisdiction in such a case does not offend traditional notions of fair play and substantial justice." Id. Here, Father had only been in Hawaiʻi once on vacation as a teenager prior to the circumstances related to this case, does not own property in the state, and does not conduct any business within the state. Thus, there is no question that Hawaiʻi lacks general jurisdiction over Father.

Second, specific jurisdiction may exist even if a defendant's contacts with the forum are not continuous and systematic. Id. In these circumstances, due process requires the following three-part test:

> (1) The nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> 2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Id.

The Family Court's findings suggest that in applying the UIFSA's long-arm statute, it focused on the personal and economic relationship between Father and Mother including conversations between Father and Mother during July 2016, around the time Mother was relocating prior to Child's birth in Hawaiʻi. On appeal, Father disputes these findings and the court's conclusion from them: that he "refus[ed] to provide living assistance for Mother."

The Family Court's FOFs are supported by credible evidence in the form of Mother's testimony, and the findings support the conclusion that Father's order that Mother leave his home without financial support caused her move to Hawaiʻi. However, "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the

requirement of contact with the forum State." <u>Kulko v. Super. Ct. of California In & For City & Cty. of San Francisco</u>, 436 U.S. 84, 93-94 (1978). In <u>Kulko</u>, the U.S. Supreme Court rejected the California Supreme Court's rationale for affirming the exercise of personal jurisdiction in California, *i.e.*, that the defendant father's consenting to his daughter living with her mother in California had been a purposeful act warranting the exercise of personal jurisdiction over him in California. <u>Id.</u> at 88-90, 94-95.

Here, although Father was aware that Mother's parents lived in Hawaiʻi, there is nothing in the record to suggest Father was aware Mother planned to move to Hawaiʻi. Mother testified that she and Father only communicated through emails from July 5, 2016 through October 4, 2016, after Mother had already started moving her bank accounts and transferring her medical bills to Hawaiʻi. However, Mother does not mention her move to Hawaiʻi in the emails and only informs Father that she was "out of town" and that she "had to pursue other living arrangements." Instead, on July 13, 2016, while requesting financial assistance and delivery of baby items, Mother provides Father with a Texas mailing address. Additionally, in the emails, Mother and Father discuss multiple doctor's appointments which Mother invited Father to attend in Texas. Therefore, Mother does not demonstrate and the record does not reflect that Father had notice that his order that she leave his home without financial support would cause Mother to move to Hawaiʻi.

We also note that, although Mother and Child moved to Hawaiʻi because of a lack of financial support in Texas, the lack of financial support cannot be solely attributed to Father given that Mother was married to HF and sometimes had her other two children stay with her. HF had previously assisted Mother with living arrangements by subleasing apartments to Mother. When Mother moved out of Father's home, HF refused to assist Mother in obtaining a rental agreement.

Additionally, "[t]he inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" Walden v. Fiore, 571 U.S. 277, 283-84 (2014) (internal quotations omitted) (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984)). That "relationship must arise out of contacts that the 'defendant himself' creates with the forum State." Id. at 283-84 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (emphasis in original omitted)).

Here, Father's actions in Texas cannot be said to be "purposefully direct[ed]" at Hawaiʻi or a Hawaiʻi resident, as Mother was a Texas resident at the time the couple separated. Father also had no connection to Hawaiʻi prior to Mother's unilateral decision to move to Hawaiʻi to receive support from her family.

Further, it cannot be said that Father availed himself of the resources of Hawaiʻi, however broadly interpreted. The Family Court's finding that Mother depends on state aid, although underscoring Hawaiʻi's interest in exercising jurisdiction, is not sufficient to establish personal jurisdiction over Father. See Kulko, 436 U.S. at 100-01 ("It cannot be disputed that California has substantial interests in protecting resident children and in facilitating child-support actions on behalf of those children. But these interests simply do not make California a 'fair forum[.]'").

In Kulko, the U.S. Supreme Court also rejected the California Supreme Court's reasoning that the father in that case received the benefit of California's police and fire protection, its school system, its hospital services, its recreational facilities, its libraries and museums because "these services provided by the State were essentially benefits to the child, not the father, and in any event were not benefits that appellant purposefully sought for himself." Id. at 94 n.7. Here, consistent with Kulko, the state aid provided to Mother did not

16

constitute benefits that Father sought for himself and instead they arose out of Mother's decision to move to Hawaiʻi.

Finally, Mother argues that under the catch-all provision HRS § 576B-201(a)(8) of the UIFSA, Father's refusal to support his child was sufficient to confer jurisdiction under Hawaiʻi's general long-arm statute, HRS § 634-35(a)(2) (1993) which provides:

> **§ 634-35 Acts submitting to jurisdiction.** (a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, the person's personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of the acts:
> . . .
>
> (2)   The commission of a tortious act within this State[.]

Mother, citing In re Custody of Miller, 548 P.2d 542 (Wash. 1976) (en banc), contends that failure to support a child is tortious conduct.  However, we need not decide whether Father's conduct fell under HRS § 634-35(a)(2) as tortious conduct, because Miller is distinguishable on due process grounds.  The Court in Miller held that jurisdiction over the putative father was proper, *inter alia*, where the father purposely brought the children to the forum and could therefore fully anticipate that a custody proceeding could be initiated in Washington.  Id. at 549.  To the contrary, in this case, Father did not purposefully bring Child to Hawaiʻi and, as noted above, the record does not indicate Father had notice that his actions would cause Mother to move to Hawaiʻi.

Therefore, for the reasons explained above, the exercise of personal jurisdiction over Father under HRS § 576B-201(a)(5) or (8) was not reasonable.  To hold otherwise would prescribe a construction to the UIFSA which would overreach due process, which the commentary to the UIFSA specifically cautions against.

**b.   Father did not consent to personal jurisdiction**

Mother contends that Father consented to personal jurisdiction or waived his defense by: (1) taking advantage of

the Family Court's discovery procedures beyond what was reasonably related to the issue of jurisdiction; and (2) simultaneously contesting the merits of custody, visitation and child support while contesting personal jurisdiction.

### (1) Discovery by Father

Mother first argues that Father submitted to the jurisdiction of the State under HRS § 576B-201(a)(2) when he served her with a request for answers to interrogatories before filing his first responsive pleading. In this regard, Mother cites cases from California, including Roy v. Super. Ct., 25 Cal. Rptr. 3d 488 (Cal. Ct. App. 2005), and a Maryland case, Friedetzky v. Hsia, 117 A.3d 660 (Md. Ct. Spec. App. 2015). Those cases are inapposite and Mother fails to explain how Father's discovery request went beyond issues related to jurisdiction.

In Roy, the California Court of Appeals held that the trial court had properly denied the defendants' motion to dismiss for lack of personal jurisdiction. In that case, the defendants filed a joint answer in which they asserted lack of jurisdiction as a defense among 24 affirmative defenses. 25 Cal. Rptr. 3d at 489. However, the defendants failed to immediately act on their assertion that the California trial court lacked personal jurisdiction and actively participated in the case by, *inter alia*, filing a case management statement, attending conferences, propounding discovery, filing numerous motions to compel when satisfactory responses were not received, and filing a motion for summary judgment. Id. at 490. Given these circumstances and its reading of applicable California law, the California Court of Appeals held that the defendants did not have the "option to plead lack of jurisdiction as a defense and reserve determination of the issue until as late as trial." Id. at 493. Rather, the defendants should have immediately raised the jurisdictional defect in a motion. Id. at 493-94.

In Friedetzky, the mother filed a petition for custody of child, and in response father filed an answer requesting that the court order paternity testing and initiated discovery to

acquire information relevant to matters of paternity and child support. 117 A.3d at 661. Mother then filed an amended complaint to include claims for paternity, child support, and counsel fees and father filed a motion to dismiss for lack of personal jurisdiction. Id. The court in Friedetzky stated that the father "invoked the court's jurisdiction by affirmatively requesting relief, particularly coupled with his requests for discovery on the issues of paternity and child support, which extend beyond the realm of custody alone." Id. at 673 (footnote omitted). Friedetzky further expressed that father anticipated receiving the benefits of the paternity testing if it was ordered by the lower court and thus availed himself of the advantages and protections of the State of Maryland. Id. at 674. Thus, the Friedetzky court held the trial court could exercise jurisdiction over father with regard to paternity and child support. Id.

Here, Mother filed her Petition on November 15, 2016, and Father was personally served with the Petition in Texas on November 21, 2016. On December 23, 2016, Father filed a certificate of service in this case indicating that he had served a "First Request for Answers to Written Interrogatories and Production of Documents to [Mother]" (**Request for Answers to Interrogatories**).[11] A month later, on January 23, 2017, Father filed his Answer to the Petition contesting the Family Court's jurisdiction over the proceedings. Unlike the defendants in Roy and Friedetzky, Father did not request affirmative relief from the Family Court and asked only for dismissal on jurisdictional grounds. See UIFSA § 201 cmt. (Unif. Law Comm'n 2008). ("Subsection (2) expresses the principle that a nonresident party concedes personal jurisdiction by seeking affirmative relief or

_____

[11] On March 22, 2017, Mother filed a certificate of service that her responses to Father's Request for Answers to Interrogatories was served the day before. Thus, Mother did not provide her answers to Father's Request for Answers to Interrogatories until Father had already filed his Answer to the Petition and the Family Court entered its Temporary Order stating it had jurisdiction over the proceedings.

by submitting to the jurisdiction by answering or entering an appearance.").

Father's Request for Answers to Interrogatories was not filed below and is not part of the record on appeal. Father asserts his Request for Answers to Interrogatories focused entirely on jurisdiction and that Mother fails to explain how Father went beyond issues of jurisdiction in his request. In turn, Mother argues that Father used information obtained from this initial discovery request at trial for issues beyond the scope of jurisdiction and appears to argue that the request alone is a general appearance; however, Mother provides no authority to support this contention.

On the question of personal jurisdiction over a defendant, the plaintiff bears the burden of establishing that the court has personal jurisdiction. See AlixPartners, LLP v. Brewington, 836 F.3d 543, 548 (6th Cir. 2016); Johnston v. Multidata Sys. Int'l Corp., 523 F.3d 602, 609 (5th Cir. 2008).

> If the [trial court] chooses not to conduct a full-blown evidentiary hearing on a pretrial motion to dismiss for lack of personal jurisdiction, plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials, even though plaintiff eventually must establish jurisdiction by a preponderance of the evidence either at a pretrial evidentiary hearing or at trial and, before the hearing is held, a prima facie showing suffices notwithstanding any controverting presentation by the moving party to defeat the motion.

Shaw 76 Hawaiʻi at 327, 876 P.2d at 1295 (emphasis added) (citation omitted); Morrill v. Scott Fin. Corp., 873 F.3d 1136, 1141 (9th Cir. 2017); Grayson v. Anderson, 816 F.3d 262, 268 (4th Cir. 2016) (holding that ultimately "a plaintiff must establish facts supporting jurisdiction over the defendant by a preponderance of the evidence").

Here, Mother has not carried her burden to show that Father sought affirmative relief by serving the Request for Answers to Interrogatories on her. Thus, Father did not waive his challenge to personal jurisdiction or make a general appearance by serving the Request for Answers to Interrogatories.

### (2) Contesting the merits as to custody, visitation, and child support, while also contesting personal jurisdiction

Mother next argues Father consented to the Family Court's jurisdiction and that he could not maintain his jurisdictional objection while simultaneously contesting the merits of custody, visitation and child support.

Father contested jurisdiction from the outset in his first responsive pleading to the Petition. Father then raised the jurisdictional issue at the January 26, 2017 hearing but was unsuccessful. During the hearing, the Family Court stated that:

> The only personal jurisdiction issue, you can call it what you may, it -- it has to do with the issues related to whether or not [Father] wants his rights with respect to visitation. If he wants to contest any of that, then he'll have to submit to this court's personal jurisdiction. If he doesn't, that's up to him, but we still have subject matter jurisdiction over the issue of custody and over the child[.]

(emphasis added).

Thus, once the Family Court asserted jurisdiction over Father, he was given the choice of either defaulting on the issue of visitation or proceeding on the merits. Moreover, based on Mother's Petition, other issues related to custody and child support were actively at issue in the case. Given these circumstances, Father proceeded on the merits as to custody, visitation and child support, but he also continued to contest the Family Court's personal jurisdiction.

On May 17, 2017, after a pretrial conference, the Family Court ordered, *inter alia*, that the parties provide a memo regarding the application of the UIFSA to this case given the jurisdiction decisions made in the Temporary Order. On June 5, 2017, Father filed his trial memo in which he continued to contest the Family Court's personal jurisdiction over him. Father argued, *inter alia*, that he does not do any business in the state, has never availed himself of Hawaiʻi's courts or laws, and that Father reasonably assumed Child would be born and raised in Texas along with Mother's other children. Father also argued that the Family Court's prior determination, that Hawaiʻi is Child's home state for purposes of child custody, is not

dispositive as to whether the Family Court had personal jurisdiction over Father for purposes of child support.

On June 14, 2017, the Family Court held trial in the case and noted Father's running objection to the Family Court's personal jurisdiction over him and that Father had preserved the objection for appeal. The Family Court did not make any further ruling regarding its jurisdiction before proceeding with the trial, during which Father contested the merits as to custody, visitation and child support.[12]

We first note that Mother's argument is inconsistent with Hawaiʻi Family Court Rule (**HFCR**) 12(b), which states in relevant part: "No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion." See In Interest of Doe, 83 Hawaiʻi at 372, 926 P.2d at 1295; see also Federal Rules of Civil Procedure (**FRCP**) Rule 12(b).

In Romero v. Star Markets, Ltd., 82 Hawaiʻi 405, 922 P.2d 1018 (App. 1996), this Court interpreted Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 12(b), relying on FRCP Rule 12(b) by analogy,[13] and noted that "Respondents did not waive their jurisdictional objection by actively participating in the court's hearing on the merits of its purported defenses[.]" Id. at 416, 922 P.2d at 1029 (citation, brackets and quotation marks omitted). We held that "Respondents' joinder of their jurisdictional defense with their affirmative defense of accord and satisfaction did not waive their assertion of the former." Id.

---

[12] On June 8, 2017, Father and Mother filed a "Stipulation Regarding Texas Law and Custody Issues" which states in part: "WHEREAS Petitioner [MJ] (hereinafter "Mother") and Defendant [CR] (hereinafter "Father") are the parents of [Child], born in 2016[.]" Father did not contest paternity during trial.

[13] FRCP Rule 12(b) provides, in pertinent part: "No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion." This language is substantially similar to HRCP Rule 12(b) and thus we can rely on legal authorities interpreting this aspect of FRCP Rule 12(b). Romero, 82 Hawaiʻi at 414, 922 P.2d at 1027.

Moreover, FRCP Rule 12(b) has been interpreted such that "[a] party who has unsuccessfully raised an objection under Rule 12(b)(2) may proceed to trial on the merits without waiving the ability to renew the objection to the court's jurisdiction." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1351 (3d ed.); see also Northern Laminate Sales, Inc. v. Davis, 403 F.3d 14, 23 (1st Cir. 2005) (quoting an earlier version of Wright & Miller); Mullins v. TestAmerica, Inc., 564 F.3d 386, 399 (5th Cir. 2009) (a *prima facie* showing of personal jurisdiction does not foreclose a defendant from holding plaintiff to his or her ultimate burden at trial of establishing contested jurisdictional facts by a preponderance of the evidence); Mimco Inc. v. Virginia Iron & Metal Recycling, Inc., 840 F.Supp. 1171, 1174 (S.D. Ohio 1993) (holding plaintiff met the burden for *prima facie* finding of jurisdiction to defeat motion to dismiss and noting the defendant could raise the issue of personal jurisdiction again at trial on the merits).

Here, after Father's challenge to the Family Court's jurisdiction was rejected at the January 26, 2017 hearing, he could proceed to trial on the merits, while continuing to challenge the Family Court's jurisdiction. See Lamarche v. Lussier, 844 N.E.2d 1115, 1119-20 (Mass.App.Ct. 2006) (holding nonresident father did not waive his jurisdictional challenge by appearing personally for a hearing where he challenged personal jurisdiction at the outset and throughout the proceedings prior to his appearance); see also Donaldson v. Donaldson, 729 P.2d 426, 429 (Idaho Ct.App. 1986) (holding nonresident husband did not waive jurisdictional challenge by signing a stipulation on the merits of child support and attorney fees after his motion to dismiss had been denied); cf. Puckett, 94 Hawaiʻi at 480, 16 P.3d at 885 (lack of personal jurisdiction waived where defendant fails to assert the defense in their first responsive pleading).

### c. Personal service on Father at the Hawaiʻi courthouse the day of trial did not establish personal jurisdiction

Mother argues that Father was personally served at the Family Court's Kapolei courthouse on June 14, 2017, the day of trial in this case, and Father failed to move to quash the service or argue that the service was improper. The record contains a proof of service indicating Father was served with the Petition on the morning of June 14, 2017. Thus, Mother contends this personal service on Father in Hawaiʻi results in the Family Court having personal jurisdiction over Father.

HRS § 576B-201(a)(1) states, in relevant part, that:

**§ 576B-201. Bases for jurisdiction over nonresident.**
(a) In a proceeding to establish or enforce a support order or to determine parentage of a child, a tribunal of this State may exercise personal jurisdiction over a nonresident individual or the individual's guardian or conservator if:

(1) The individual is personally served with summons or notice within this State[.]

The Uniform Law Comment for the UIFSA states that, this section is designed to be as broad as constitutionally permissible and "[s]ubsection (1) codifies the holding of Burnham v. Super. Ct., 495 U.S. 604 (1990), which reaffirms the constitutional validity of asserting personal jurisdiction based on personal service within a state." UIFSA § 201 cmt. (Unif. Law Comm'n 2008). Mother also cites to Burnham. We must, however, consider the context in Burnham, where the U.S. Supreme Court reiterated the proposition that "jurisdiction based on physical presence alone constitutes due process because it is one of the continuing traditions of our legal system that define the due process standard of 'traditional notions of fair play and substantial justice.'" Id. at 619. In Burnham, the U.S. Supreme Court held that personal service in the forum state was sufficient where the nonresident defendant was served after he voluntarily traveled to the forum state on business and to visit his children. Id. at 608, 628; see also Northern Light Tech. Inc. v. Northern Lights Club, 236 F.3d 57, 63 (1st Cir. 2001) (upholding personal

24

jurisdiction where the defendant <u>voluntarily</u> entered the State to attend proceedings as a <u>spectator</u> in the same case in which he was served with process).

Here, the circumstances are quite different. Unlike <u>Burnham</u>, Father was served in Hawaiʻi while here for trial that same day in this case, and after his challenge to the Family Court's personal jurisdiction had previously been rejected by the Family Court. Father had filed his answer contesting jurisdiction almost six months earlier, on January 23, 2017. Further, as previously noted, Father continued to contest personal jurisdiction in the proceeding. Indeed, on the same day that Father was served in Hawaiʻi, the Family Court noted Father's running objection based on his contention that the Family Court lacked personal jurisdiction over him.

<u>Burnham</u> recognized that there are some exceptions to jurisdiction based on in-state service upon individuals brought into the forum by force or fraud, or who are in the forum as a party or witness in unrelated judicial proceedings. <u>Id.</u> at 613. Further, in <u>Lamb v. Schmitt</u>, 285 U.S. 222, 225 (1932), the U.S. Supreme Court stated that "[t]he general rule that witnesses, suitors, and their attorneys, while in attendance in connection with the conduct of one suit, are immune from service of process in another, is founded, not upon the convenience of the individuals, but of the court itself." The Supreme Court held that the test for immunity is "whether the immunity itself, if allowed, would so obstruct judicial administration in the very cause for the protection of which it is invoked as to justify withholding it." <u>Id.</u> at 228.

Here, Father was not served process regarding a separate suit such that the immunity recognized in <u>Lamb</u> would apply. Rather, he was served in regard to the very case he was defending against -- in which he had already unsuccessfully challenged the court's personal jurisdiction -- while appearing for trial in the proceedings during which he continued to

25

challenge the court's personal jurisdiction.  Mother's argument in this case, that the Family Court has personal jurisdiction over Father based on the in-state service alone, would render Father's previous timely challenge to the Family Court's personal jurisdiction moot and would obstruct the judicial administration regarding Father's defense to personal jurisdiction.  See Glynn v. EDO Corp., 641 F.Supp.2d 476, 486-87 (D. Md. 2009); Lester v. Lester, 637 So.2d 1374, 1375-76 (Ala. Civ. App. 1994) (holding defendant was immune from service regarding the instant suit while in the jurisdiction to attend a hearing challenging personal jurisdiction); Stewart v. Stewart, No. 110058, 2015 WL 326424 at *6 (Kan. Ct. App. Jan. 16, 2015) (unpublished) (holding personal service on nonresident father was not valid personal service under Kansas long-arm statute where he was in the state for a hearing on his motion to dismiss for lack of personal jurisdiction).

In Glynn, the plaintiff served a nonresident defendant while he was in the forum state to file a motion to extend the time to file a motion challenging jurisdiction in the same case. Id. at 481, 486.  Glynn rejected the plaintiff's theory of personal jurisdiction based on the in-state service because "[t]he constitutional due process protections of 'minimum contacts' and 'fair play and substantial justice' would be illusory, for as soon as the defendant entered the state to assert these protections, the defendant would lose them by being subject to in-state service of process."  Id. at 487.  Finally, Glynn notes that the plaintiff's theory of personal jurisdiction would lead to an illogical result where a defendant could lose their jurisdictional defense if they are served in-state while in the jurisdiction to raise the jurisdictional defense.  Id. at 487-88; see also, Stewart, 2015 WL 326424 at *6 (explaining that recognition of personal service over a nonresident litigant present in the state while moving to dismiss for lack of personal jurisdiction would "seem to make a mockery of a nonresident litigant's right to challenge personal jurisdiction.").

Here, Father objected to the Family Court's personal jurisdiction over him from the beginning, continued to contest jurisdiction during the proceedings, and raised his objection again at trial after being served that morning. Thus, we conclude that under these circumstances, the in-state service of the Petition on Father the morning of trial did not establish personal jurisdiction over him.

**3. Mother and Child were not without remedy in this case**

In <u>Hart</u>, this court noted that the resident parent and child were not without remedy when the Family Court cannot maintain personal jurisdiction over the respondent. <u>Hart</u>, 110 Hawaiʻi at 297, 132 P.3d at 865. The UIFSA provides two general avenues of relief: (1) file a petition "in an initiating tribunal for forwarding to a responding tribunal" or (2) file "directly in a tribunal of another state which has or can obtain personal jurisdiction over the respondent." <u>Id.</u> (quoting HRS § 576B-301(c)).[14] Mother did not take either of these actions in this case.

Thus, although the Family Court had jurisdiction to make the initial custody determination of Child under the UCCJEA, it did not have personal jurisdiction over Father required to determine his paternity or to order him to pay child support. "A judgment rendered in the absence of personal jurisdiction is void and must be set aside." <u>Romero</u>, 82 Hawaiʻi at 413, 922 P.2d at 1026 (citation omitted).

**IV. Conclusion**

For the foregoing reasons, to the extent they address the issue of custody, we affirm the "Order" entered on January 26, 2017, and the "Decision and Order" entered on September 1, 2017. We vacate these orders to the extent they address Father's paternity, child support, or other monetary obligations from

---

[14] <u>Hart</u> cites to HRS § 576B-301(c), but the pertinent provision is HRS § 576B-301(b).

Father, but without prejudice to Mother seeking to address those issues through appropriate proceedings in an appropriate forum.


On the briefs:

Peter Van Name Esser,
    and
Curtis Kam (Lynnae Lee
& Associates), for
Defendant-Appellant.

Robert H. Thomas
Ross Uehara-Tilton
(Damon Key Leong Kupchak
Hastert), for Plaintiff-Appellee.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Keith K. Hiraoka
Associate Judge